UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SELIM STRUGA,

        Petitioner,                      CASE NO. 17-cv-10753

v.

                                      PAUL D. BORMAN
J.A. TERRIS,                        UNITED STATES DISTRICT JUDGE

        Respondent.
_____/

**OPINION AND ORDER
DENYING THE PETITION FOR WRIT OF HABEAS CORPUS
AND
GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

This matter has come before the Court on petitioner Selim Struga's *pro se* habeas corpus petition under 28 U.S.C. § 2241. Petitioner is in custody at the Federal Correctional Institution in Milan, Michigan. He challenges a federal magistrate judge's certification that Petitioner is subject to extradition to the Republic of Albania for the crime of intentional murder. As explained more fully below, there is evidence supporting the magistrate judge's determination that probable cause exists to believe Petitioner committed the murder. Accordingly, the Court upholds the magistrate judge's decision and denies the habeas corpus petition.

**I. Background**

The murder in question was committed during an altercation at a tavern in Tirana, Albania on June 21, 1989. The victim was Gezim Celmeta, who was stabbed and killed during the altercation. Petitioner left Albania within several days of the murder and went

to the former Yugoslavia where he requested asylum in August of 1989. Later that year or in early 1990, Petitioner entered the United States, and in 1995 or 1996, he became a United States citizen.

On December 4, 2001, while Petitioner was residing in the United States, he was convicted in Albania of murdering Mr. Celmeta. On December 14, 2001, the Albanian court sentenced Petitioner *in absentia* to fifteen years in prison, and in 2002, a warrant for Petitioner's arrest was issued. Petitioner's conviction was reversed on appeal, but reinstated by a higher court, and after Albanian officials learned that Petitioner was living in the United States, they requested Petitioner's extradition.

On December 7, 2011, an assistant United States attorney in this district filed a complaint for provisional arrest with a view toward extradition. *See United States v. Selim Struga*, No. 2:11-mc-51540 (E.D. Mich. Dec. 7, 2011). On the same day, a magistrate judge issued a warrant for Petitioner's arrest, and on December 8, 2011, Petitioner was arrested in Troy or Royal Oak, Michigan. Following a detention hearing, the magistrate judge denied Petitioner's motion for bail. Former Chief United States District Judge Gerald E. Rosen affirmed the magistrate judge's order, and on January 25, 2012, the Government made a formal request for Petitioner's extradition to Albania. *See id*., ECF No. 20.

Judge Rosen referred the extradition request to United States Magistrate Judge R. Steven Whalen, who conducted an extradition hearing on March 15, 2016, and subsequently certified Petitioner for extradition. *See United States v. Struga*, 231 F.

Supp.3d 244 (E.D. Mich. 2017). The extradition case was reassigned to this Court following Judge Rosen's retirement from the federal bench.

On March 7, 2017, Petitioner commenced this action. The petition was assigned to former United States District Judge John Corbett O'Meara and later reassigned to this Court as a companion to Petitioner's 2011 extradition case.

Petitioner's sole ground for relief is that there was insufficient evidence to support Magistrate Judge Whalen's finding of probable cause on the intentional murder charge. Petitioner claims that the witness statements, photographic identification of him, and the Government's speculation regarding the reason he left Albania do not support a finding of probable cause. Petitioner urges the Court to vacate Magistrate Judge Whalen's certification of extradition or stay his transfer to Albania.

## II. Analysis

**A. Legal Framework**

In this country, "extradition is governed by the federal extradition statute." *Cheung v. United States,* 213 F.3d 82, 87 (2d Cir. 2000). The extradition statute provides that,

> [w]henever there is a treaty or convention for extradition between the United States and a foreign government . . . any justice or judge of the United States, or any magistrate judge authorized so to do by a court of the United States . . . may, upon complaint made under oath, charging any person found within his jurisdiction, with having committed within the jurisdiction of any such foreign government any of the crimes provided for by such treaty or convention, . . . issue his warrant for the apprehension of the person so charged, that he may be brought before such justice, judge, or magistrate judge, to the end that the evidence of criminality may be heard and considered . . . . If, on such hearing, he deems the evidence sufficient to sustain the charge . . . , he shall certify the same . . . to the Secretary of

> State, that a warrant may issue . . . for the surrender of such person, according to the stipulations of the treaty or convention . . . .

18 U.S.C. § 3184.

These procedures were followed in Petitioner's extradition case. Petitioner, nevertheless, challenges Magistrate Judge Whalen's conclusion that there was probable cause to sustain the charge of intentional murder. Because an alleged fugitive may not appeal a certification of extradition on direct review, the individual may collaterally challenge the decision to extradite him or her in a habeas corpus petition under 28 U.S.C. § 2241. *Zhenli Ye Gon v. Holt*, 774 F.3d 207, 210 (4th Cir. 2014); *Prasoprat v. Benov*, 421 F.3d 1009, 1013 (9th Cir. 2005). Thus, Petitioner's case is properly before this Court on habeas corpus review under § 2241.

The scope of habeas corpus review, however, "is highly constrained" in an extradition action. *In re Extradition of Drayer*, 190 F.3d 410, 415 (6th Cir. 1999). A habeas corpus proceeding

> is not a means for rehearing what the magistrate already has decided. The alleged fugitive from justice has had his hearing and habeas corpus is available only to inquire whether the magistrate had jurisdiction, whether the offense charged is within the treaty and, by a somewhat liberal extension, whether there was any evidence warranting the finding that there was reasonable ground to believe the accused guilty.

*Fernandez v. Phillips*, 268 U.S. 311, 312 (1925).

Petitioner is not contesting the magistrate judge's jurisdiction or whether intentional murder is an offense charged in the treaty between the United States and Albania. The only issue is whether there was probable cause to believe that Petitioner committed intentional murder, as charged by Albanian officials. When deciding whether

there is any evidence to support a magistrate judge's determination of probable cause, a habeas court conducts a deferential review of the magistrate's findings and conclusions. *United States v. Kin-Hong*, 110 F.3d 103, 116-17 (1st Cir. 1997); *Zhenli Ye Gon v. Holder*, 992 F. Supp. 2d 637, 645 (W.D. Va. 2014).

**B. Application**

    **1. The Magistrate Judge's Decision**

Magistrate Judge Whalen determined in Petitioner's extradition case that the Government had shown probable cause to believe Petitioner committed the charged offense because there was circumstantial evidence that Petitioner stabbed and killed Mr. Celmeta. This conclusion is supported by the witnesses' accounts of the crime. The victim's friend, Bujar Rama, informed an investigator that a man in a red shirt was holding a knife when four individuals confronted Mr. Celmeta. Although Mr. Rama did not see the actual stabbing, he noticed that the man in the red shirt had been standing to the left of Mr. Celmeta, and shortly after Mr. Rama heard a ruckus, he saw a blood stain on the left side of Mr. Celmeta's back. Based on the position of the men who approached Mr. Celmeta and the location of Celmeta's injury, Mr. Rama assumed that only the man in the red shirt or the man's friend could have assaulted Celmeta. *See* Pet. for Writ of Habeas Corpus, Exs. H-I, ECF No. 1, Pg ID 60-66.

Petitioner's friend, Adriatik Kokona, initially told an investigator that he did not witness anything. In a subsequent interview, however, Mr. Kokona stated that Petitioner was wearing a red shirt on the night of the crime and that Petitioner possessed a big knife, which he carried on his side. Mr. Kokona said that he did not see Petitioner use the knife

during the fight with Mr. Celmeta, but he thought that Petitioner must have stabbed Celmeta because Celmeta was stabbed on the left side of his back where Petitioner was standing at the time. *See id*., Exs. A and B, Pg ID 45-49

Muhamet Nezaj also described Petitioner as wearing a red shirt on the night of the crime. Initially, Mr. Nezaj told an investigator that he did not know what Petitioner did during the altercation and that he did not observe the stabbing or see anyone with a knife. In a subsequent interview, Mr. Nezaj stated that, before the stabbing, Petitioner approached two individuals who were seated at a table and said to them, "Give me back what you took." One of the individuals then handed Petitioner a knife, which Petitioner placed in his waist area. When Mr. Nezaj asked Petitioner what the object was, Petitioner said, "Nothing, nothing at all, I do not have anything." Mr. Nezaj later learned at the police station that Mr. Celmeta was killed with a knife. *See id*., Exs. E-G, Pg ID 53-59. Another witness, Fatmir Macka, identified Petitioner in a photograph, which was shown to him in 2011. *See id*., Ex. D, Pg ID 50-51.

Magistrate Judge Whalen summarized the facts as follows:

> [T]here is evidence (1) Mr. Struga had possession of a knife shortly before the fight; (2) Mr. Struga was wearing a red shirt; (3) the man in the red shirt had a knife in his hand at the time of the fight; (4) during the fight, Mr. Celmeta was stabbed in the back with a knife; and (5) Mr. Celmeta died as a result of his injuries.

*Struga*, 231 F. Supp.3d at 252.

Although Petitioner contends there was no evidence that he was involved in the fight, Magistrate Judge Whalen concluded that the evidence "constitute[d] a circumstantial chain of evidence supporting a finding of probable cause that Mr. Struga

6

committed the charged offense." *Id*. Magistrate Judge Whalen's decision is entitled to deference, *Kin-Hong*, 110 F.3d at 116-17; *Zhenli Ye Gon*, 992 F. Supp. 2d at 645, and must be affirmed on habeas review if there was "*any* evidence warranting the finding that there was reasonable ground to believe the accused guilty." *Fernandez*, 268 U.S. at 312 (emphasis added).

Here, the victim's friend told investigators that a man wearing a red shirt on the night of the crime had a knife in his hand. Two of Petitioner's acquaintances confirmed that Petitioner was wearing a red shirt that night. Further, Mr. Celmeta died from a knife wound, and Petitioner was the only person who was seen with a knife during the altercation. The Court concludes that there was evidence supporting the Magistrate Judge's determination that probable cause existed to believe Petitioner intentionally murdered Mr. Celmeta.

### 2. Petitioner's Arguments

#### a. The Witnesses' Statements

Petitioner contends that the witnesses' statements are entirely unreliable because some witnesses contradicted their earlier statements and had criminal charges against them dismissed after they implicated Petitioner in the murder. This argument lacks merit because the credibility of the witnesses and the weight to be accorded their statements was solely within the province of the magistrate judge. *Quinn v. Robinson*, 783 F.2d 776, 815 (9th Cir. 1986). Weighing the evidence is not a function a habeas court performs when reviewing the magistrate's probable cause determination. *Sainez v.* Venables, 588

F.3d 713, 718 (9th Cir. 2009). Instead, the Court's "role is to determine whether there is competent evidence in the record to support the magistrate's determination," *id*., and competent evidence need not be evidence sufficient to justify a conviction. *See Collins v. Loisel*, 259 U.S. 309, 316 (1922) (explaining that the magistrate judge's function is "to determine whether there is competent evidence to justify holding the accused to await trial, and not to determine whether the evidence is sufficient to justify a conviction").

In the present case, moreover, there is no evidence that the witnesses were coerced into making incriminating statements about Petitioner or that they were promised anything in return for statements implicating Petitioner in the murder. The witnesses' statements were competent evidence, and the magistrate judge did not err in considering them.

### b. The Identification of Petitioner

Petitioner contends that Fatmir Macka's identification of him was suggestive because Mr. Macka was shown only one photograph, and the viewing occurred twenty-two years after the crime. The Court rejects this argument because even though "the magistrate may take the circumstances of an identification into account in assessing its reliability, there is no *per se* rule that specifies which identification procedures are 'competent' for probable cause purposes." *Quinn,* 783 F.2d at 815. "An identification based on a single photograph may be competent evidence of identity in an extradition proceeding." *Manta v. Chertoff,* 518 F.3d 1134, 1145 (9th Cir. 2008).

8

Furthermore, Petitioner had no objection to the admission of his photograph at his detention hearing, *see Struga*, case number 11-mc-51540, ECF No. 12 at 20-22, PageID. 66-68, and he admitted at the extradition hearing that the person in the photograph was him, *see id.*, ECF No. 81 at 33-35, PageID. 752-54. Under the circumstances, the magistrate judge did not err in relying on Mr. Macka's identification of Petitioner in a single photograph viewed years after the crime.

### c. The Government's Theory

Petitioner argues next that the Government's theory – that he left Albania to avoid prosecution for murdering Mr. Celmeta – is a dubious theory. Petitioner maintains that he has never been a fugitive, that he has never tried to hide his identity, and that he was simply trying to escape a repressive government.

The implausibility of an alleged fugitive's explanation can give credence to the government's theory, *see Kin-Hong*, 110 F.3d at 119, and Petitioner's explanation for leaving Albania was somewhat implausible. He claimed at the extradition hearing that he left Albania because it was a communist country and because he hated the regime. While that may explain why he disliked living in Albania, it does not explain the timing of his decision to leave the country and his family and become a fugitive.

Moreover, evidence of flight "is a legitimate ground from which to infer guilt," and it can be used in the consideration of probable cause in an extradition matter. *Eain v. Wilkes*, 641 F.2d 504, 511 (7th Cir. 1981); *see also In re Extradition of Fulgencio Garcia*, 188 F. Supp.2d 921, 934-35 (N.D. Ill. 2002) (concluding that the fugitive's flight

from Mexico after the crime strongly supported the finding of probable cause to extradite).

Petitioner's decision to leave his family, friends, and homeland within several days of the murder could be construed as consciousness of guilt. Thus, the Government's theory as to why Petitioner left Albania was not dubious, and the magistrate judge was warranted in finding probable cause based, in part, on the Government's theory.

### d. The Albanian Courts

Petitioner has submitted documents suggesting that the Albanian court ignored, misused, or violated its own procedures or laws when trying and convicting him *in absentia*. The documents also imply that the country has, or had, a corrupt judiciary.

Whether the Albanian court violated its own rules and procedures is irrelevant here because a magistrate judge in an extradition case should avoid making determinations on foreign law. *Skaftouros v. United States*, 667 F.3d 144, 156 (2d Cir. 2011). Habeas courts, moreover, "do not inquire into the fairness of criminal procedure or punishment under the laws of the country seeking extradition." *Martinez v. United States*, 828 F.3d 451, 487 (6th Cir.) (Clay, C.J., dissenting), *cert. denied*, 137 S. Ct. 243 (2016). This "rule of non-inquiry bars courts from evaluating the fairness and humaneness of another country's criminal justice system, requiring deference to the Executive Branch on such matters." *Id.* (quotation marks and citations omitted).

### III. Conclusion

Petitioner's own exhibits support Magistrate Judge Whalen's findings, conclusions, and determination that probable cause existed to believe Petitioner intentionally murdered Mr. Celmeta. Therefore, Petitioner is not "in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2241(c)(3), and the petition for writ of habeas corpus is denied.

Petitioner may proceed *in forma pauperis* on appeal if he appeals this decision, because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3). Petitioner is not required to move for a certificate of appealability because the statute governing certificates of appealability "does not require a certificate of appealability for appeals from denials of relief in cases properly brought under § 2241, where detention is pursuant to federal process." *Witham v. United States*, 355 F.3d 501, 504 (6th Cir. 2004).

Dated: September 24, 2018        s/Paul D. Borman
                                 Paul D. Borman
                                 United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 24, 2018.

                                 s/D. Tofil
                                 Deborah Tofil, Case Manager